THE STATE v. JOHN BOWERS, Appellant.

**Division Two, February 6, 1912.**

**CARNAL KNOWLEDGE: Attempt to Ravish: Intent: Instruction.** Where defendant took a girl thirteen years of age to a rooming house, and while she was on a bed, got on top of her, with his private parts exposed, her drawers being down, but made no attempt at penetration, and there was no dampness or wetness on her legs, and after two or three minutes he got up, buttoned up his trousers and went away, the court should have instructed the jury that if the acts were done by defendant without the intention of having carnal knowledge of her, then they did not constitute an assault to commit a rape. Under the circumstances the jury should have been permitted to say whether or not the defendant had the intent to ravish the girl.

Appeal from St. Louis City Circuit Court.—*Hon. George C. Hitchcock,* Judge.

REVERSED AND REMANDED.

*Chas. P. Johnson* and *Silver & Dumm* for appellant.

(1) The trial court committed error in permitting the prosecutrix to testify, over defendant's objection, that Irene Hennessey told her (prosecutrix) that defendant had intercourse with her (Irene Hennessey) on the occasion of the first visit of the two girls to Allison's room. This testimony was pure hearsay, and was of a character extremely prejudicial to defendant. And the error in admitting it was not

cured by the court's subsequent direction to the jury to disregard it. State v. Mix, 15 Mo. 153; State v. Marshall, 36 Mo. 400; State v. Fredericks, 85 Mo. 145; State v. Kuehner, 93 Mo. 193; State v. Thomas, 99 Mo. 235; State v. Minor, 193 Mo. 597; People v. Zimmerman, 4 N. Y. Crim. 272. (2) It was error to admit testimony that defendant had sexual intercourse with Irene Hennessey a week before the commission of the alleged offense. People v. O'Sullivan, 104 N. Y. 484; McAllister v. State, 112 Wis. 496; Wharton's Crim. Ev. (9 Ed.), sec. 46; People v. Bowen, 49 Cal. 654; State v. Walters, 45 Iowa, 389; Barton v. Bruley, 96 N. W. (Wis.) 815; State v. Lapage, 57 N. H. 245. (3) The court erred in refusing to give instruction 1 requested by defendant. State v. Dalton, 106 Mo. 469.

*Elliott W. Major,* Attorney-General, and *John M. Atkinson,* Assistant Attorney-General, for the State.

(1) Appellant contends that the court erred in permitting the prosecutrix to testify that Irene Hennessey told her that appellant had intercourse with her (Hennessey) on the first visit to the Allison room. The court ruled that the prosecutrix could not testify to what Irene told her about appellant's relations on the first visit. The court so instructed the jury as Governor Johnson requested. After so instructing the jury the court said: "Now, is there anything further you wish me to tell the jury on that question?" Governor Johnson: "No, sir; not at present." Thus appellant waived any right to further complain at the court's ruling. He did not so much as ask for a written instruction on this point. Furthermore, no exception was properly saved at the time. The only objection went to the evidence as being "incompetent and not relevant in this case." This court has often

held that this amounts to no objection at all.   Furthermore, appellant admitted on cross-examination that he had intercourse with the Hennessey girl, and, for the reasons given under the second point of this brief, such evidence was perfectly competent and cured any error here complained of, if error it be.   (2) It is next contended by appellant that the court committed prejudicial error in admitting in evidence the fact that appellant had intercourse with the Hennessey girl on the first visit of the two girls to the Allison room.   This evidence was competent for at least three reasons:   (a) It showed the motive and intent which appellant had in inducing these two small girls to visit the Allison room—the motive to have intercourse with them.   1 Bishop's Crim. Proc., secs. 1120, 1127, 1128, 1129; State v. Spaugh, 200 Mo. 594; State v. Bailey, 190 Mo. 279; People v. Molineux, 160 N. Y. 293.   (b)   The evidence further identified appellant as the one who committed the assault on the prosecutrix.   (c) · Appellant testified on cross-examination that it was the Hennessey girl that he had intercourse with on the second visit of the two girls and not with the Steinmetz girl on the second visit as she testified. By this testimony of appellant it became competent to show that on the first visit of these girls appellant had intercourse with the Hennessey girl, and on the second visit the assault on the Steinmetz girl.   (3) The court did not err in refusing defendant's instruction 1.   There was no evidence to warrant its giving. According to the State's evidence, appellant was guilty of an assault on the Steinmetz girl.   According to defendant's own testimony, he was not guilty of any assault or any lewd and lascivious conduct. · Appellant testified, "I had nothing to do with her at all, whatever."

FERRISS, P. J.—The defendant was convicted in the circuit court of the city of St. Louis of assault with intent to ravish one Clara Steinmetz, a girl under the age of fourteen years.

The testimony for the State tended to show that defendant, a man of fifty-eight years of age, went to a room belonging to a friend of his on Franklin avenue, in St. Louis, with two girls, the prosecuting witness and one Irene Hennessey, a girl of fifteen years, the prosecuting witness being at the time thirteen years of age.

The prosecuting witness testified that Irene Hennessey, the defendant and herself were in this room and that she was on the bed, when the following occurred:

"Q. Now, with respect to you, when you were on the bed, where was he? When you were on the bed, Clara, how close to you was he? A. He got on top of me. Q. He got on top of you—were his private parts exposed at that time? A. Yes, sir. Q. And how long did he lie on top of you?

"Gov. Johnson: I object to that. I haven't heard her say that he lay on top of her.

"Mr. Harvey: She stated that.

"Mr. Griffin: She has just stated that.

"Gov. Johnson: Go ahead.

"By Mr. Griffin: Q. How long did he lie on top of you? A. About three minutes. Q. About three minutes? A. Yes, sir. Q. And then what did he do? A. Then he got up. Q. And what did he do then? A. He didn't do nothing. Q. Were his private parts exposed when he got up? A. Yes, sir. Q. Tell us what he did after he got up; what did he do—explain to us? A. He didn't do nothing. Q. Well, were his clothes unbuttoned at the time he got up? A. Yes, sir. Q. Well, did he button them up, or what did he do? A. He buttoned them up."

The prosecuting witness, upon being recalled on behalf of the defendant, testified as follows:

"Q. At the time that you charged that you were on the bed with the defendant here, did you feel his privates against your body? A. No, sir. Q. At any time during that time did you find any dampness or wetness upon your legs? A. No, sir. Q. At the time when you were on the bed did you take down your drawers—unbotton your drawers? A. I told you that this morning. Q. That is what I believe you said that you did. Did you go right home after that? A. Yes, sir."

There was evidence tending to show that the prosecuting witness was examined by a physician subsequently to this transaction, that she was unusually small for her age, and that there was no evidence of penetration. The evidence further tended to show that this defendant had met these two girls about a week before in this same room, at which time he took improper liberties of some kind with the Hennessey girl. Just how far he went it is hard to tell from the record. Whatever he did was done in the presence of the prosecuting witness, but he did nothing to her at that time.

Defendant denies having had intercourse with either girl at either time, but admits that he did some "fooling" with the Hennessey girl.

It is insisted by defendant that the court should have given the following instruction offered by him:

"The court instructs the jury that if the acts as testified to by the witness were done by the defendant without the intention of having carnal knowledge of her, the prosecuting witness, then they only amounted to indecent and lascivious conduct, and, however reprehensible morally, did not constitute an assault to commit a rape."

We think, under the peculiar circumstances of this case, that this instruction should have been given.

The rule adopted by the trial court in instructing in this case is the one approved in State v. Dalton, 106 Mo. 463, namely, that preparation and acts towards the accomplishment of his purpose, with the present means of carrying it into effect, would constitute an assault with intent to ravish. This statement of the law was taken from State v. Shroyer, 104 Mo. 441. In that case the prosecuting witness, with her brother and sister, was asleep on the floor in a bedroom. An older sister was lying in the bed. The defendant crawled over to the prosecuting witness, put his hand on her arm, and then was seen to lie close to her, with his face close to her face. He then rose up and looked around the room, and then began to unfasten his pants. The older sister hallooed, and the defendant crawled towards the door and left. Upon this state of facts, the court said that to sustain an indictment for an assault to commit a rape, it was not necessary that any violence should have been used; that "if the intent, with the present means of carrying it into effect, exists, and preparations therefor have been made, the assault is complete;" citing several cases. The court further says, "It was the evident intention of defendant to have connection with the girl without her consent, and whether it was to be by actual physical force, or during the unconsciousness of sleep, is wholly immaterial."

This proposition of law contains two essential elements of fact. There must be an intent to commit the offense, and the means must be present to carry this intent into effect. The intent, however, can only be discovered by the facts and circumstances in the case, and when the actions of a person indicate that he is animated by a certain intent, it is fair to presume that such intent exists. Therefore, if the defendant placed this girl upon the bed, exposing her person, got on top of her, exposing his person, nothing further appearing, the offense would be complete

because the law would presume that he intended to commit the act. But if all the acts of the defendant, and the circumstances surrounding, reasonably show the absence of the intent, then an essential element of the crime is wanting.

In the Dalton case, above referred to, the facts were quite similar to those under discussion. Speaking of them, the court says: "If these acts were done by defendant without the intention of having carnal knowledge of the girl, while asleep, they only amounted to indecent and lascivious conduct to a child under his care and protection, and whose purity he should have guarded, which, however reprehensible morally, did not constitute rape, or an attempt to commit that crime."

In the case at bar the prosecuting witness, although legally incapable of consent on account of her age, was in fact a willing victim. She made no resistance, and contemplated none. The defendant had full opportunity to at least attempt a penetration. Considering the position he was in, and the want of opposition, no reason can be perceived why he should not have carried out his intent if he entertained it. He voluntarily left the girl without attempting intercourse. The fact that he voluntarily left the girl can be explained according to the ordinary laws of human conduct upon one of two grounds—either he had no criminal intent, or he lacked the means of carrying it into effect.

The prosecuting witness testifies that the privates of defendant, although exposed, did not touch her person. It is clear, therefore, that no attempt was made by him to consummate the act. It does not follow, because the defendant was guilty of abominable and lecherous conduct, violating one of the most sacred obligations resting upon men, that is, to protect the purity of young girls, that he was guilty of an attempt to rape. Too much cannot be said in repro-

bation of a man who would deliberately aid a young girl on the downward path, even though she showed herself quite willing to pursue it; but it is our duty to see that a man accused of crime be accorded all the rights which the law allows him, no matter how heinous the charge upon which he is tried.

We think the jury should have been allowed to say whether or not the defendant had the intent to ravish this girl, and that therefore the court erred in refusing the instruction offered by defendant. For this error the judgment is reversed and the cause remanded for new trial. *Kennish* and *Brown, JJ.*, concur.