STATE OF WEST VIRGINIA *v.* THOMAS CORAM

(No. 8209)

Submitted September 24, 1935. Decided October 15, 1935.

MAXWELL, JUDGE, dissenting.

*Wm. E. Chilton, Sr., T. M. McIntire* and *Eugene T. Hague*, for plaintiff in error.

*Homer A. Holt*, Attorney General, and *Kenneth E. Hines*, Assistant Attorney General, for the State.

HATCHER, JUDGE:

From conviction of a charge of attempted rape, the defendant secured a writ of error.

The defendant denied the charge, but since the verdict of the jury was against him, we must favor the evidence of the State, which is as follows:

About 10:00 A. M. on a Sunday in October, 1934, Betty Richards, then aged five years and seven months, was sent by her mother to purchase a newspaper. Betty returned about twenty minutes later, in a disheveled condition, started to cry and exclaimed: "He spilled white stuff all over me * * * he held me close to him and spilled white stuff." The upper part of Betty's legs and the lower front of her dress were wet with a whitish fluid. She wore tight-fitting panties which were dry. A friend of Mrs. Richards went with the child at once to ascertain *where she got the paper.* Betty's statement upon that trip, as narrated by the friend, was stricken out. Upon her return home, Betty was taken by an officer to a beer garden and news stand operated by defendant who is an adult. The officer there asked Betty "if that was the man with the white apron on" (defendant), and she answered yes. In response to interrogation, the defendant said, according to the officer, "that the child had been up there after a paper, and that he took her in the back room to wrap the paper up, and that he gave *them* to her and put the money in her pocket." The officer said the back room "is a storage room and there are beer cases and coca-cola cases there, and there was one * * * case that was * * * standing on its end." Betty's legs were red and sore, and she complained that her genitals burned when given a bath. She was taken by her mother and a policeman to a doctor for examination, as testified to by the policeman, "to see if the little girl had been

injured in any way,'' and ''no entry had been made * * * according to the doctor's statement.'' The doctor did not testify and there is no evidence regarding the appearance of the child's genitals. A pathological examination disclosed seminal fluid on the front of her dress. The child was produced as a witness but the trial court ruled she was not competent to testify.

The defendant estimated that Betty waited in his place from five to ten minutes, while he served other customers, and proved, without controversion, that customers were coming and going all the time she was there. He contends that her several statements to her mother and to the officer are not admissible in evidence, and that the court erred in giving state's instructions 1 and 2 and in refusing defendant's instructions 1 and 17.

An infamous charge deprives an accused of none of his legal rights; and the more infamous the accusation the more careful courts should be that a fair trial is had and that legal evidence, not prejudice, is the basis of a conviction. *Herrick* v. *Territory*, 2 Okla. Cr. 74, 76, 99 P. 1096. A discussion of the evidence in this case is nauseous. A dispassionate consideration thereof is difficult. It is our duty, nevertheless, to attempt both.

The attorney general contends that the statements of the child are admissible as part of the *res gestae.* Statements are admissible as such if spontaneous and made while under the influence of the transaction itself. Underhill's Cr. Ev. (4th Ed.), sec. 200; *Sample* v. *Ry. Co.*, 50 W. Va. 472, 478, 40 S. E. 597. Betty's conversation with her mother occurred within a few minutes after she had been attacked. Her body was still slimed, and her emotions still fomented from the sexual embrace. Under such circumstances, it seems beyond question that her statement was spontaneous and voiced the transaction. See *State* v. *Gilreath,* (Mo.) 267 S. W. 880. There is a division of authority on the reception of such a statement as original evidence, where the injured female does not testify. The later authorities favor its admission when part of the *res gestae.* After stating a general rule to the contrary, Wharton in the eleventh edition of his work

on criminal evidence, just off the press, sec. 520, says: "But where the declarations of the prosecuting witness are a part of the *res gestae,* a different situation pertains. Declarations admitted as *res gestae* constitute original evidence, and are not admitted as corroborative of a witness, but on the theory that they are verbal acts connected with the transaction, and calculated to illustrate its character. Under this theory, therefore, although the victim of rape is not a witness, both her complaints, and the details thereof, are admissible, where the circumstances are such that they constitute a part of the *res gestae.*" Accord: Wigmore on Ev. (2nd Ed.), sec. 1761; *Thomas* v. *State,* 47 Tex. Cr. 534, 84 S. W. 823; *Commonwealth* v. *Bardino,* 20 Pa. Dist. 473; *State* v. *Eckelberry,* 153 Minn. 494, 496-7, 191 N. W. 256; Annotation 2 A. L. R. 1522.

Different circumstances, however, surround-Betty's statement to the officer. She had become mentally composed before he started with her to confront defendant. Her identification of him was not voluntary, but in response to a leading question by the officer. Interrogation alone does not exclude a reply from the *res gestae;* but the question should not prompt the answer. *Commonwealth* v. *Bardino, supra.* Moreover, the question of the officer was not definite. The child was asked merely if defendant was "the man." What man? The salesman or her assailant? She is not quoted as saying that she was assaulted in the paper shop, or that the salesman was her assailant. She had been brought to defendant's store just a short while before to see if that was the place she had purchased the paper. There is nothing in the evidence to indicate that she had been informed or otherwise understood that her second trip was to identify her assailant instead of the man who had sold her a paper. It is just as tenable that her answer referred to the latter as to the former. For the same reasons, the admissibility of the answer cannot be even considered as affecting an admission (silent) against defendant's interest, or as his extrajudicial identification. (For modern view of the latter, see Wharton, *supra,* sec. 439.)

It is suggested that other circumstances identify defendant as the assailant. Without analyzing that suggestion, suffice to say it is at least debatable; and if conviction is to depend on

the other circumstances, they alone should be submitted to the jury. The answer of Betty to the officer was seemingly understood by him to identify defendant as her assailant. (The officer forthwith arrested defendant.) Counsel for the state assume the same position. It is fair presumption that the jury drew the same inference from the answer and did not consider separately· the weight of the other circumstances. If so, the answer was very damaging to the defendant.

State's instruction number 1 defined attempted rape as an unfinished crime, consisting of an intent to rape and a direct act in consummation thereof which fails. No error is pointed to in this instruction and we perceive none.

State's instruction number 2 instructed the jury to find the defendant guilty if it believed from the evidence beyond a reasonable doubt that he "placed his male organ against the privates of Betty Richards" with intent to know her carnally. This instruction is calculated to mislead. The jury could well infer that the act of placing the one organ against the other, itself implied intent to rape. While that juxtaposition would usually indicate intent to have carnal knowledge, yet when nothing more than that form of contact is attempted such intent is negatived. *State* v. *Matsinger*, (Mo.) 180 S. W. 856. The instruction is further objectionable because supported only by conjecture, and the burden of proof is not sustained thereby. 16 C. J., *supra*, sec. 1088. The evidence thereon will be discussed later.

Defendant's instruction number 1 was peremptory and was properly refused.

Defendant's instruction number 17 follows: "The Court instructs the jury that improper advances and indecent liberties do not necessarily imply an intent to commit rape, and that in this case if you believe that improper advances were made toward Bettie Joan Richards by the Defendant at a time and place when she was within the power of the Defendant, and that said advances were not met with unusual resistance or checked by outside interference, but were terminated voluntarily by the Defendant or upon the mere request of Bettie Joan Richards, then such desistence should weight heavily in favor of the Defendant."

The legal premise of this instruction is correct. *State* v. *Gill*, 101 W. Va. 242, 132 S. E. 490, 491. But the hypothesis which follows does not reflect the evidence, and the conclusion is not a sequence of the premise. So this instruction was also properly refused. The stark facts proven in relation to the assault are these, and these only: some male person held Betty close and spilled semen on her legs and dress. We do not overlook the testimony that her legs were red and sore and that she experienced a burning sensation in her private parts in the bath. But it is common knowledge that the legs and genitals of little children frequently get sore from natural causes. Mrs. Richards did not testify that none of this soreness existed prior to the assault. In the absence of such testimony, the soreness is attributed to the assault only by inference. The inference of any violence whatever to Betty's genitals is very attenuated. Mrs. Richards did not relate observing any marks of violence on them. The fact that the child was taken to the doctor, according to the policeman, to see if she had been "injured in any way" (presumably in her genitals) certainly indicates that there was no visible mark of injury. It seems beyond peradventure that if the child's sexual organ had borne any such mark, both Mrs. Richards and the doctor would have observed it and the state would have had them testify thereto. In the case of *White* v. *Commonwealth* (1894), 96 Ky. 180, 187, 28 S. W. 340, the court said that upon a charge of rape it was settled law that "there must be proof of some degree of entrance of the male organ within the labia of the pudendum, and the practice seems to be * * * not to permit a conviction in which it is alleged violence was done, without medical proof of the fact, whenever such proof is attainable." Upon a charge of attempted rape it is equally well settled that the evidence must show an intent to make the entrance referred to, and in debatable cases it would also seem proper to require the state to present medical proof, when available. The absence of such testimony herein, greatly favors the accused on the question of intent, and intent is the gist of this offense. *People* v. *Dowell*, 136 Mich. 306, 99 N. W. 23; *State* v. *Perkins*, 31 S. D. 447, 141 N. W. 364; 52 C. J., subject Rape, sec. 40; Wharton's Cr. Law (12th Ed.),

sec. 748. "The mere fact that the proxecutrix is under the age of consent does not dispense with the necessity to * * * prove intent." *State* v. *Matsinger, supra.* That intent is the specific purpose to have the male sexual organ penetrate that of the female at least to some extent. Where circumstantial evidence is relied upon, "all circumstances from which the conclusion of guilt is drawn * * * must be established by full proof." 52 C. J., *idem,* sec. 127. Accord: *State* v. *Harrison,* 98 W. Va. 227, 127 S. E. 55. "The intent cannot depend on mere speculation. It must be clearly shown." *State* v. *Gill, supra.* Here, Betty was in the power of the assailant, and he had the opportunity to attempt penetration had he so intended. Any such attempt by a man on a child so small would have necessarily resulted in bruising or laceration. *Boseman* v. *State,* 34 Tex. Cr. 503, 506, 31 S. W. 389. The evidence discloses no such result, and the intent to penetrate is further negatived by the absence of seminal fluid on Betty's panties. No reason appears why the assailant should not have carried out the intent if he entertained it. His repression, under the circumstances, points strongly to the conclusion that he did not intend to attempt penetration. *State* v. *Bowers,* 239 Mo. 431, 437, 144 S. W. 97. As early as 1793, the Supreme Court of Pennsylvania, held: *"Emissio seminis* of itself makes not rape without actual penetration." *Pennsylvania* v. *Sullivan,* 2 Pa. (Addison) 143. Accord: Wharton, *supra,* sec. 699. It is apparently settled law now that on a charge of attempted rape, "intent to produce *emissio seminis,* and actual production thereof, without intent to penetrate is insufficient." *State* v. *Wilson,* 32 Wyo. 37, 228 P. 805. Accord: 23 Am. & Eng. Ency. Law, subject Rape, 851-2. Consequently, an assailant afflicted with a perverted sexual appetite—"a victim of erotic fetichism"—who designs to produce and does produce an orgasm by merely pressing or rubbing his sexual organ against some external part of the female, while guilty of an assault *is not guilty of an* intent to rape. See *State* v. *Wilson, supra,* and the many cases cited on pp. 44 to 51, and also the cases cited in *State* v. *Gill, supra,* p. 246.

It might seem at first thought that in cases of conduct so repulsive as this, nice distinctions on the facts proven should

not be drawn. The law, however, has named a number of sexual crimes and has drawn nice distinctions between the elements of each crime. We but expound the law. Here, the defendant is accused and convicted of a specific crime, which the law distinguishes from every other sexual offense. To sustain a conviction of that specific crime, every ingredient of that crime must be distinctly proved beyond a reasonable doubt. *Newman* v. *The People*, 223 Ill. 324, 79 N. E. 80. A clear issue in this case is whether the assailant intended to penetrate the child's sexual organ or to produce emission without penetration. *State* v. *Wilson, supra*. That issue should have been submitted to the jury with proper instructions. *People* v. *Dowell, supra*.

The judgment of the circuit court is therefore reversed, the verdict of the jury set aside and the defendant awarded a new trial.

> *Judgment reversed; verdict set aside; new trial awarded.*

MAXWELL, JUDGE, dissenting:

I cannot concur in this decision.

It is a point of the decision that the mistreated child's identification of her assailant is not well grounded. As stated in the opinion, some male person held the little girl and emitted semen on her. She was absent from her home only about twenty minutes. It is admitted that within that time she visited defendant's place of business and purchased a newspaper of him. Time, place and circumstances seem to exclude the possibility that any person other than the defendant forced his embraces upon the child. This renders her identifying statement to the policeman of secondary and inconsequential moment. Let, then, that statement be eliminated. There remains, in my judgment, ample identification of the defendant as the guilty party. The said statement can not logically be said to have prejudiced the defendant if the whole evidence, without the statement, is such that the jury could not properly have returned a verdict other than "guilty." Such is my version of that phase of the evidence.

The action of the majority of the Court is further sought

to be justified on the theory that maybe, after all, the defendant did not have the intent of penetration. It is asserted that "any such attempt by a man on a child so small would have necessarily resulted in bruising or laceration." Concededly such result would probably attend, but it might not. Whether there was laceration would depend on the persistence of the effort to penetrate.

It is my judgment that in the situation disclosed by this record, the ends of justice do not require refinement of reasoning to determine what may or may not have been the defendant's intentions when he wronged the child. Where a record, as here, warrants a jury in finding that the accused was guilty of revolting brutality of conduct, nicety of judicial distinction in appraisal of the intent actuating the vicious behavior seems inconclusive.

Therefore, I respectfully dissent.