204 P.2d 254

### STATE v. GAILEY.

No. 7435.

Supreme Court of Idaho.

March 16, 1949.

148

Marshall Chapman and Lawrence B. Quinn, both of Twin Falls, for appellant.

Robert E. Smylie, Atty. Gen., J. R. Smead, Asst. Atty. Gen., Boise, and Everett M. Sweeley, Pros. Atty., of Twin Falls, for respondent.

SUTTON, District Judge.

The appellant was charged with and convicted of the crime of assault with intent to commit rape alleged to have been committed on the person of a fourteen-year old girl on the 29th day of June, 1947, in Twin Falls County. From this conviction and the judgment rendered thereon, he has appealed and makes 32 assignments of error.

The first nine assignments all begin with the statement, "The verdict and judgment of conviction are against the evidence and are not sustained thereby", which statement is followed by a recital of the various particulars in which it is claimed the evidence does not support the conviction, such as that the evidence of the prosecutrix at the trial shows a material departure from her evidence at the preliminary examination; that the testimony of the prosecutrix with respect to the identification of the defendant is inherently improbable and incredible; that the evidence shows that at the time of the alleged assault, the defendant was in a drunken stupor and incapable of entertaining the necessary specific intent; that the conviction was the result of a studied attempt to inflame the minds of the jury; that the specific intent necessary to the crime charged is not proved.

■ These several assignments, in our opinion, go no further than to raise questions as to the credibility of the witnesses and the weight to be given to their testimony, which are matters exclusively for the jury to determine, State v. Murray, 43 Idaho 762, 254 P. 518; and these several assignments require no further consideration except as they are incidentally noticed later in this opinion.

By Assignment No. 31, it is charged the court erred in overruling defendant's demurrer to the information, it being contended the particular circumstances of the offense charged are not sufficiently set forth in the information.

■ Perhaps it would have been better had the information contained a more extended recital of the circumstances. However, we are not here concerned with a case requiring either allegation or proof of an assault calculated to overcome the resistance of the prosecutrix by force or fear, the victim of the assault in this case being but fourteen years of age, State v. Bernhardt, 51 Idaho 134, 3 P.2d 537; and we are of the opinion the information was

sufficient and there was no error in overruling the demurrer to it.

By Assignment No. 32, it is charged the court erred in permitting the endorsement of the names of two additional witnesses on the information after the commencement of the trial.

The record discloses that on January 30, 1948, the Prosecuting Attorney served upon counsel for the defendant a notice that when the cause was called for trial, he would move the court for an order permitting him to endorse the names of these two additional witnesses on the information, and that the Prosecuting Attorney first learned of the witnesses on that date. The record further shows the trial commenced February 5; that at the beginning of the morning session on February 6, in the absence of the jury, the Prosecuting Attorney moved for an order permitting the endorsement of the additional names; and by reason of the fact no formal motion, but only a notice of intention to move for such an order, was in the record, the matter was continued by the court until 1:30 p. m. when, the formal motion having been filed, the court made an order permitting the endorsement of the names of Harvey Fornwalt and Katherine Fornwalt upon the information. In objecting to the endorsement of the additional names, the defendant did not contend that he was in anywise surprised nor did he ask for a continuance, but based his objection upon certain alleged deficiencies in the procedure followed by the Prosecuting Attorney. In ruling upon the matter the trial judge stated: "The court is of the opinion that the defendant will not be taken by surprise or placed at any undue disadvantage under the law."

We concur in that opinion, and there was no error in permitting the endorsement of the additional names. State v. Hoagland, 39 Idaho 405, 228 P. 314.

By Assignment No. 10, it is charged the court erred in giving Instruction No. 7 without incorporating therein, "the definition of assault with intent to commit rape, defined in Sec. 17-1207, I.C.A."

Instruction No. 7 was a copy of Sec. 17-1601, I.C.A. so far as it is applicable to the case. Sec. 17-1207, I.C.A. does not define any offense, but rather fixes the penalty for certain types of assault. There was no error in giving Instruction No. 7.

By Assignment No. 11, it is charged the court erred in giving Instruction No. 14; and by Assignments No. 12 to No. 29 inclusive, it is charged the court erred in refusing to give defendant's requested Instructions Nos. 1, 2, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 19, 20 and 21,

An examination of the record fails to disclose what defendant's requested Instructions Nos. 8 and 11 were, and thus Assignments No. 18 and No. 21 cannot be considered.

Requested No. 1 was that the jury be instructed to find the defendant not guil-

ty. The refusal to give such an instruction is not reviewable in this court, State v. Stevens, 48 Idaho 335, 282 P. 93. This also disposes of Assignment No. 30.

■ Requested Instruction No. 14 is a so-called "cautionary instruction" and it was not error to refuse it, State v. Elsen, 68 Idaho 50, 187 P.2d 976.

The other several assignments, with respect to instructions requested and refused, in the main raise but a single question; and that is whether or not the jury was correctly instructed with respect to the law concerning the effect of voluntary intoxication in determining the existence or non-existence, on the part of the defendant, of the specific intent necessary to constitute the offense charged; and the several assignments, we believe, may be considered together. In order to do so, it becomes necessary to summarize and cite a few specific items of the evidence. It may be fairly said the record shows without contradiction that between 1:00 and 2:00 o'clock of the morning of June 29, 1947, the young lady in question was asleep in her bed in the family home just on the border of the village of Hansen; that she was alone in said home, her father and mother being absent by reason of illness of her mother; that she was awakened by finding a man in bed with her, who then and there made an assault upon her with the avowed purpose of accomplishing an act of sexual intercourse; that a very considerable struggle ensued during which the girl was choked, her face bruised and one eye blackened, and a large bump raised upon her head; that she finally escaped her assailant by striking him with a potted plant and ran screaming from her home in her night clothes, barefooted, in a more or less hysterical state to the home of a neighbor not over 100 feet distant, where she then and there, among other things, declared to Mrs. Bernice Simpson: "Bernice, Max tried to kill me." "He tried to rape me. He tried to kill me. He beat me all up." There can be no doubt that some man made a felonious assault on the prosecutrix. By way of identifying that man as being the defendant, the prosecutrix testified in substance that although she was uncertain while struggling with her assailant in the darkened bedroom as to who he was, she knew and recognized him in the kitchen at the time she struck him with the flower pot; that it was the defendant; that she had known the defendant all her life; that he had been a frequent visitor at her home and she and her parents in his home; that as she left the house the defendant's car was parked in front of the gate in such a manner that she was obliged to dodge around it on her flight to the neighbor. Mr. and Mrs. Fornwalt, who reside about one block from the home of prosecutrix, testified they were awakened by hearing some one scream; that they saw some one run from the home of prosecutrix to the Simpson residence; that they heard a motor start and recognized the defendant as

he drove away from the neighborhood in his car without lights, and bareheaded.

A number of witnesses testified that during the afternoon and evening of June 29 and on later dates, the defendant in effect admitted his presence at the scene of the assault, stating he did not know why he did the things he did and that he was sorry. And there was introduced in evidence a man's hat, which, according to the witnesses, was found on the morning after the assault together with a package of cigarettes and a packet of matches, in the bed clothes of the bed in which the prosecutrix was sleeping, which hat was positively identified by the father of the prosecutrix as being the defendant's hat.

As indicated earlier, the question of the credibility of the several witnesses and the weight to be given to their testimony were matters for the jury. This court cannot say there is not ample evidence to identify the defendant as the man who made the assault upon the prosecutrix.

The defendant testified, and is corroborated by other evidence, that between noon and midnight of June 28, he consumed a considerable quantity of beer and whiskey at Twin Falls, Kimberly, Hansen and other places in Twin Falls County, and at the close of that period of time he was drunk. In fact, the prosecutrix herself, on cross examination and in answer to the question: "Now, when you first awakened what condition did you find this man was in, as to being intoxicated or otherwise?", stated: "I would say he was so drunk he did not even know his name. That is what I would say." And she was asked further: "And you are positive of that, are you, Virginia, that he was that drunk?", and she answered: "I am positive."

As we understand it, appellant's contention, is that the State is bound by this testimony and that it is thereby established that even if the defendant did make the assault, he was incapable by reason of his drunkenness to entertain the specific intent necessary to constitute the offense charged. Whether the statement of the witness be considered the immature judgment of a fourteen-year old girl as to the extent of her assailant's intoxication, or whether it be considered as a mere figure of speech, it does not in our judgment establish as a matter of law that the defendant was incapable and did not in fact entertain the specific intent necessary to the offense; that is, an intent to have and accomplish an act of sexual intercourse with this girl. That such an intent was necessary cannot be denied; neither can it be denied that the question of intent is one of fact to be determined by the jury, State v. Andreason, 44 Idaho 396, 257 P. 370.

In determining this question of fact, the jury had a right and in fact were required to take into consideration all of the evidence. And, in addition to the evidence already mentioned, we call attention to the fact that prosecutrix in recit-

ing the words and acts of her assailant, described how he had taken hold of her, attempted to tear off her night clothes, get his legs between hers, all the time telling her what he intended to do and that if she did not submit, he would kill her; his language as quoted by this unfortunate girl being so vulgar and obscene as to be unfit to place upon the records of this court.

In passing, it should be noticed that the defendant does not deny that he was at the home of prosecutrix or that he made the assault. In fact, he could not make such a denial by reason of the fact, according to him, he had no recollection of anything between the time he left Twin Falls somewhere about midnight of June 28 and the time he was awakened by his wife in his own home around 8 o'clock in the morning of June 29. There was also offered on behalf of the defendant the testimony of two doctors who gave their professional, medical opinion as to the effect of intoxication and the responsibility or mental capability of a person in a certain state of intoxications; but they did not express, nor were they asked for, any expression of their opinion as to the mental capacity of the defendant on the night in question. Their testimony had reference to an assumed individual in an assumed state of intoxication, without regard to whether, in their opinion, the evidence indicated to them the defendant in this case was in that state of intoxication. It follows, in our opinion, that there is ample evidence from which the jury might find the fact to be that the defendant did have the specific intent necessary to constitute the offense charged; which brings us to a consideration of the instructions on the question of intoxication and the existence of specific intent.

By Instruction No. 5, the jury were informed that one of the material allegations of the information was that the defendant intended to commit an act of sexual intercourse upon the girl, and that if the jury had a reasonable doubt that the defendant did have such an intent, then they could convict him of no more than the included offense of simple assault.

By Instruction No. 9, the jury were instructed in the language of Sections 17-114 and 17-115, I.C.A. By Instruction No. 10, the jury were instructed: "that the intent alleged in the information must be proved beyond a reasonable doubt;" and by Instruction No. 11, they were instructed: "That the intent cannot be presumed but must be shown by competent evidence beyond a reasonable doubt." By Instruction No. 13, the jury were instructed in the language of Sec. 17-116, I.C.A. Instruction No. 15, given by the court, reads as follows: "The court instructs the jury that if you find from the evidence that an assault was made upon the prosecutrix * * * by the defendant Max L. Gailey, and you further find that at the time of said assault the defendant's mental faculties were so far overcome by the effect of in-

154

toxication as to render him incapable of entertaining the specific intent to commit the crime of assault with intent to commit rape, then you would find the defendant not guilty of such offense."

Instruction No. 14, which is the basis of appellant's Assignment No. 11, reads as follows:

"One of the material allegations in this case is that in making an attempt to commit an act of sexual intercourse upon the girl * * *, the defendant intended to commit such act. Intent is a state of mind meaning the purpose or design with which an act is done or attempted. It is the opposite of unintentional, or inadvertent, mistaken or accidental.

"Voluntary intoxication is no excuse or defense for a criminal act. But in this case if the jury finds that the defendant was intoxicated at the time the offense is alleged to have been committed, the jury should then carefully consider all of the facts and circumstances shown by the evidence and from them determine whether such intoxication, if the jury finds there was such, was voluntarily caused by the defendant, and whether it was of such kind or degree as to render the defendant incapable of intending the usual, ordinary and natural consequences of his acts. Or whether his acts, if the jury finds the defendant did commit the acts alleged, were because of such intoxication, done unintentionally, or by inadvertence, mistake or accident

"If the jury, after a careful consideration of all of the evidence has a reasonable doubt that the defendant because of intoxication intended to commit an act of sexual intercourse upon the said girl, then it cannot find the defendant guilty of assault with intent to commit rape. But if the jury after a careful consideration of all the evidence is convinced beyond a reasonable doubt that the defendant did the acts alleged and that in doing such acts his intoxication did not prevent his intending the usual, ordinary and natural consequences of his acts, proof of the intent alleged in the information would be sufficient."

These instructions are certainly as favorable to the defendant as he had any right to demand. They were clear and free from conflict, and there was neither error in giving them nor in refusing to give the defendant's requests covering the same subject matter. An examination and comparison of the defendant's other requested instructions in the light of the instructions given, satisfies us that insofar as defendant's requested instructions were correct statements of the law, they were adequately covered by the instructions given.

We find nothing in the record warranting the appellant to a reversal of the judgment and conviction in this case, and they are affirmed.

HOLDEN, C. J., GIVENS and HYATT, JJ., and SUTPHEN, D. J., concur.