STATE OF WEST VIRGINIA

*v.*

DONALD MAHRAMUS, *alias Fluter*

(No. 13313)

Submitted September 18, 1973. Decided November 20, 1973.

*David J. Joel* for plaintiff in error.

*Chauncey H. Browning, Jr.,* Attorney General, *Richard E. Hardison,* Deputy Attorney General, *E. Leslie Hoffman, III,* Assistant Attorney General, for defendant in error.

BERRY, CHIEF JUSTICE:

A petition for a writ of error and supersedeas was filed in this Court on July 14, 1972 by Donald Mahramus, the defendant below, hereinafter referred to as defendant, contending that the defendant's conviction of rape by a jury in the Circuit Court of Hancock County should be reversed because of numerous errors that occurred during the trial. This Court granted an appeal on January 22, 1973 and the case was submitted for decision on September 18, 1973 on the oral arguments and briefs on behalf of the respective parties.

At the beginning of the trial, the circuit court properly read into the record an order authenticated under Code, 57-1-12, from a Virginia Court that the prosecutrix, Debra Schultz, who was fifteen years old at the time of the alleged rape, would not be required to attend the trial of the defendant because she was emotionally unstable and was scheduled to undergo a psychiatric examination the day after the trial was scheduled to begin.

Since the prosecutrix did not testify at the trial, the state's key witness was Deborah Jones who testified that after a dance at the Weirton Community Center on December 12, 1969 she and the prosecutrix went to a tavern called the Village Inn and had a couple of beers with some of their friends. The prosecutrix had made prior arrangements to spend the night at Deborah Jones' home that evening. Deborah Jones, who was sixteen years of age at the time of the incident, became engaged in a conversation with one Bob DeAngelo at the Village Inn and when the tavern closed shortly after 2 o'clock, a.m., Deborah Jones agreed to accompany Bob DeAngelo to a motorcycle gang clubhouse known as the Barbarian Club, of which DeAngelo was a member. Deborah Jones testified that although the prosecutrix was reluctant to

go to the clubhouse, she went after Deborah Jones reassured her. The group arrived at the Barbarian clubhouse at about 2:20 a.m. on the 13th of December. There were approximately 20 or 25 people at the clubhouse partying when they arrived. The testimony reveals that several persons were smoking marijuana and taking seconal and tuinal pills.

Deborah Jones testified that she and Bob DeAngelo went into the kitchen to get something to drink at which time she heard the prosecutrix scream. When she returned to the living room the prosecutrix was gone and the defendant was no longer in the room. Deborah Jones then tried to go upstairs, which consisted of two bedrooms, to see if the prosecutrix was there but someone stopped her and slapped her across the face. Deborah Jones testified that a few minutes later she and Bob DeAngelo went upstairs to the other bedroom and she heard the prosecutrix on several occasions scream, "Don't" and heard the prosecutrix crying. Although the prosecutrix was in the next bedroom, which did not have a door on it, Deborah Jones testified at the trial that she was not able to see into the bedroom. However, at this point the state claimed surprise at Deborah Jones' testimony and the court allowed the state to treat her as a hostile witness. The state then proceeded to cross-examine Deborah Jones using a written statement signed by Deborah Jones eighteen days after the alleged rape in which she stated that when she first went upstairs she saw the defendant and the prosecutrix under the covers on the bed and she also heard the prosecutrix crying and screaming, "Help me."

Deborah Jones testified that she was later allowed to go into the other bedroom and that there were five or six men, including the defendant, standing around while the prosecutrix was getting dressed and crying hysterically. She stated that they then went downstairs and Bob DeAngelo and a male companion drove the two girls to the Jones home, which was approximately a five minute drive. During this drive the prosecutrix was crying and

stating that she had lost her virginity and named the defendant and "Louie the Rat" but did not know the names of the others who had had sexual intercourse with her.

Several months after Deborah Jones made the written statement to the authorities and before she testified in court she spent two weeks in the home of Harriet Russell, a 23 year old girl friend of the defendant, who testified on behalf of the defendant. It became necessary for Deborah's mother to take legal action in order to have her removed from the Russell home.

Deborah Jones' sister, Doris Wade, testified that she was sleeping in the same room with her sister and the prosecutrix and that she overheard the prosecutrix crying and repeating over and over to her sister when they came into the bedroom that she had been raped by five or six men and that the defendant had been one of the assailants. Doris also testified that the prosecutrix's eyes were swollen, that there was a bruise on the side of her face and that she was still somewhat incoherent after she awakened the next morning.

An ex-member of the Barbarians testified that he was present in the clubhouse during the time the alleged rape took place. He testified that he saw the defendant and the prosecutrix arguing. He said it appeared that the defendant was trying to get the prosecutrix to take some pills but she refused to take them. He also stated that the defendant began pulling the prosecurtix up the stairs to the bedrooms but concluded that the defendant was not actually forcing her up the stairs.

The prosecutrix was examined the evening of December 13, 1969 and the medical evidence showed that there was a contusion near the hymenal ring and that a substance removed from the vagina contained spermatozoa. The gynocologist stated that the hymenal ring was lacerated which was caused from "some sort of forceful entry."

The defendant alleges that numerous errors occurred during the trial but relies only on three assignments of

error in his brief. First, defendant contends that the statements made by the prosecutrix to Deborah Jones and overheard by Doris Wade after the girls returned to the Jones home were inadmissible because they were hearsay and did not fall within the res gestae exception to the hearsay rule. Secondly, the defendant contends that the state was improperly allowed to cross-examine its own witness, Deborah Jones, because the state was not "surprised" by her testimony on direct examination. Finally, the defendant contends that the court erred in giving an instruction to the jury that it should consider the strength and physical endurance of both the defendant and the prosecutrix in determining whether the prosecutrix had been overcome by the superior strength of the defendant since there was no evidence whatsoever at the trial to that effect.

Although the defendant listed several errors in a repetitious manner, only three were briefed, and, therefore, the others, which incidentally were not well taken, were waived by the defendant.

The first assignment relied on by the defendant is the use of statements made by the prosecutrix, Debra Schultz, to Deborah Jones and overheard by Doris Wade, the sister of Deborah Jones, soon after the alleged rape of the prosecutrix. It is the contention of the defendant that these statements constitute hearsay evidence and do not fall within the res gestae exception. There is no merit to this contention.

It appears that the defendant bases this assignment of error on the testimony of Doris Wade who testified at the trial that she heard the prosecutrix state to her sister after they came home that she had been raped by five or six men and that the only two she knew were the defendant and another man called "Louie the Rat". It is contended that the statements were made to Deborah Jones and that she was never asked to corroborate them. The record in this case shows that immediately after the alleged rape, while on the way home, the prosecutrix

was crying and saying that she had lost her virginity and that the defendant and "Louie the Rat" had engaged in intercourse with her, but that she did not know the names of the others. The statements made in the presence of Doris Wade were made within a few minutes after these statements and were to the same effect in that she said she was forced to have intercourse with the defendant and several other men. These statements by the prosecutrix were made soon after the alleged crime and were spontaneous and properly come within the res gestae rule. *State v. Coram,* 116 W.Va. 492, 182 S.E. 83; *State v. Withrow,* 142 W.Va. 522, 96 S.E.2d 913; *Duncan v. State,* 170 Tex. Cr. R. 132, 339 S.W.2d 220; *Estep v. State,* 14 Md. App. 53, 286 A.2d 187; *Palmer v. State,* 134 Tex. Cr. R. 390, 115 S.W.2d 641; 2 WHARTON, CRIMINAL EVIDENCE, § 313 (13th ed. 1972).

In the case of *State v. Coram, supra,* which involved the prosecution for an attempted rape, the statements of a five year old girl to her mother, made within a few minutes after the alleged attempted rape, were held admissible as part of the res gestae. The first syllabus point of the *Coram* case, which follows, clearly shows that the statements involved in the case at bar, and testified to by Deborah Jones and her sister, Doris Wade, are admissible under the res gestae rule: "Statements by a participant in a transaction are admissible as part of the *res gestae,* if spontaneous and made while under the influence of the transaction itself." That case also held that although the prosecutrix does not testify in a rape case her statements are admissible where the circumstances are such that they constitute a part of the res gestae. See. *Thomas v. State,* 47 Tex. Cr. R. 534, 84 S.W. 823; *State v. Eckelberry,* 153 Minn. 494, 191 N.W. 256.

The case of *State v. Withrow, supra,* is somewhat similar to the *Coram* case wherein it was held that statements of a small child made to her teacher in a hallway after returning to the classroom following a sexual attack were held to be admissible as part of the res gestae.

In the case of *Duncan v. State, supra,* the prosecutrix told her mother of an alleged rape by the defendant, which, according to the information related to her mother upon her mother's attention being drawn to her daughter's torn clothing and scratched legs upon the daughter's return home, took place while the prosecutrix and the defendant were parked in a car. It was held that the mother's testimony with regard to the information related by the daughter to her upon arriving home was admissible under the res gestae exception to the hearsay rule.

The case of *Estep v. State, supra,* is somewhat similar to the case at bar. In that case the prosecutrix was raped by four men and after being released took a taxi to her home, during which time she apparently told the cab driver what had happened, and in a dazed and crying condition told her husband after arriving home. It was held that the husband's testimony as to what his wife told him was proper evidence under the res gestae exception to the hearsay rule.

The second assignment of error pertains to the use of a written statement by the state and the cross-examination of Deborah Jones, a state's witness, in connection with the statement.

It is the contention of the defendant that Deborah Jones' testimony was the same as her testimony in an earlier trial; therefore, the state was not surprised by it, and, thus, it was error to allow the state to use a prior written inconsistent statement in cross-examining her as a hostile witness.

It is true that it is improper for a party to impeach his own witness by the use of a prior inconsistent statement if he knows before trial that the witness will deny the contents of the statement. In such case there is no ground to claim surprise or that the witness is hostile, because it is known before the witness is put on the stand what the testimony of the witness will be. *Hartley v.*

*Crede,* 140 W.Va. 133, 82 S.E.2d 672; *Jackson v. State,* 124 Ga. App. 488, 184 S.E.2d 185; *Cherb v. State,* Tex. Cr. App., 472 S.W.2d 273; *United States v. Dunmore,* 446 F.2d 1214. However, there was no objection on the part of the defendant at the trial to the use of the statement, and even if the statement should not have been allowed to be used in examination of the witness, any error in connection therewith not being objected to by the defendant is deemed waived by him and cannot be considered by this Court. *State v. Bragg,* 140 W.Va. 585, 87 S.E.2d 689; *State v. Mayle,* 136 W.Va. 936, 69 S.E.2d 212; *State v. Files,* 125 W.Va. 243, 24 S.E.2d 233.

This principle is clearly stated in the tenth syllabus point of the case of *State v. Bragg, supra,* in the following language: "An error in the admission of evidence not objected to by the defendant is deemed waived by him."

There is no merit to the third assignment of error wherein the defendant contends that the court erred in instructing the jury that it could consider the physical strength and endurance of the prosecutrix and the defendant.

It is contended by the defendant that there is no evidence to support this instruction. To the contrary, the physical makeup of the prosecutrix is contained in the record several times, both by medical and lay witnesses, to the effect that she was a slender girl, rather tall for her age and weighing around 110 to 115 pounds. The defendant was present during the trial and the jury could observe with their own eyes his physical makeup.

The defendant contends that there were no eye witnesses to the actual rape in this case and that the state endeavored to prove its case by circumstantial evidence. It is well recognized and firmly established that proof of guilt in any criminal case may be established by circumstantial as well as direct evidence. *State v. Maley,* 151 W.Va. 593, 153 S.E.2d 827; *State v. Bailey,* 151 W.Va. 796, 155 S.E.2d 850. This principle is clearly set out in point 4

of the syllabus of the case of *State v. Bailey, supra,* wherein it is held: "The weight of circumstantial evidence, as in the case of direct evidence, is a question for jury determination, and whether such evidence excludes, to a moral certainly, [*sic*] every reasonable hypothesis, other than that of guilt, is a question for the jury."

For the reasons stated herein, the judgment of the Circuit Court of Hancock County is affirmed.

*Judgment affirmed.*