# CHARLES TOWN.

## STATE v. NEWMAN.

Decided September 7, 1901.

1. CRIMINAL LAW—*Self-Defense—Jury—Verdict.*

   A question of self-defense is peculiarly a jury question, and an appellate court will not set aside a verdict against that defense except in rare cases, where it is very manifestly and plainly against the evidence. (p. 725).

2. CRIMINAL TRIAL—*Verdict—Recommendation.*

   Where a verdict finds a defendant guilty of a crime, a recommendation in that verdict by the jury to the mercy of the court has no legal effect, is mere surplusage, and cannot be considered in an appellate court to set aside the judgment of the trial court infixing punishment. (p. 725).

3. SPECIAL JUDGES—*Election of—Presumption.*

   Where one person has been elected special judge to hold a court during the absence of the regular judge, and a second special judge is elected, though the record does not state the absence of the first special judge or other cause of his election, but only states that the regular judge is absent, it will be presumed that there was cause for the election of the second special judge from the absence of the first special judge, or other cause, unless it otherwise appears from the record, and the action of the second judge will be valid. (p. 726).

4. SPECIAL JUDGES—*Number May be Elected.*

   There may be more than one special judge elected during the same term to hold a court in the absence of the regular judge, if from the absence of the first elected judge there be reason for the election of a second special judge. (p. 727).

5. CRIMINAL TRIAL—*Presence of Defendant.*

   If it may be inferred from the record that a person is present in person at a trial, it is sufficient, though the record do not affirmatively say that he was present in his proper person. (p. 727).

Error to Circuit Court, Kanawha County.

William Newman was convicted of unlawful shooting, and brings error.

*Affirmed.*

J. W. KENNEDY and F. L. BEARDSLEY, for plaintiff in error.

R. H. FREER, ATTY. GEN., and ALEX DULIN, for the State.

BRANNON, PRESIDENT:

William Newman was convicted in the criminal court of Kanawha County of the unlawful shooting of Jack Shea, and was sentenced to the penitentiary for three years. He applied to the circuit court of Kanawha County for a writ of error, but it was refused, and then he brought this writ of error in this Court.

The first point which his assignments of errors makes against the judgment is that the court refused to give him a new trial on the ground that the verdict was contrary to the evidence. I shall only say, because it is only necessary to say, that as the question before the jury was whether the shooting was excusable, as in self-defense, was peculiarly a jury question of fact, and I need not cite authority to say that we cannot reverse the jury and the criminal court for error herein. The shooting not being questioned, and the sole question being one of self-defense or not, it must be a very plain case of erroneous verdict to justify this Court in overruling a verdict approved by the trial judge, as has been held a thousand times. We cannot thus invade the province of a jury. In the Federal courts, and most of the State courts, no error can be based on the refusal of a new trial, where the question is purely one of evidence, and while such is not the law in this State, still it is an admonition to us of the sanctity and legal effect of a verdict of a jury, and of the danger of our interference with a verdict except upon the plainest grounds of error. *State* v. *Hunter,* 37 W. Va. 744; *State* v. *Bowyer,* 43 *Id.* 180; *Lawrence's Case,* 30 Grat. 845.

The second point made against the judgment is, that the verdict was for unlawful shooting only with a clause added in the words "and (the jury) asks the mercy of the court," and that this indicated a finding for a misdemeanor only, and the court erred in sending Newman to the penitentiary. Plainly there is nothing in this point. The verdict distinctly found Newman guilty of unlawful wounding, as charged in the indictment, and the recommendation was simply surplusage, which the court was at liberty to disregard, because the court is given by law the sole power and discretion to fix the punishment, and to say whether, in such a case as this, the party shall be punished by confinement in the penitentiary or jail. Code, chapter 144, section 9; chapter 152, section 21. A jury cannot infringe upon the

prerogative of the court in such matter. The law demands of the judge that he shall pass his judgments as to the mode and extent of the judgment. Nor can it be said that the punishment is excessive, because if it is within the limit of the law, it cannot be so regarded.

A third point made against the judgment is that J. H. Couch tried the accused as special judge, and that the record shows that on one day of the court George W. McClintic was elected a special judge, on the 5th day of January, and that on the 9th day of January, Edwin M. Keatley was elected special judge, and that on the 6th day of February James H. Couch was elected special judge, and that the record shows no reason for the election of Couch, futher than its statement that "the judge of this court not being able to attend the court this day, the clerk of this court at the instance of the attorneys present and practicing in this court, proceeded to hold an election of a judge to hold said court during the absence of said criminal judge." The contention is that McClintic, under his election on the 5th day of January filled the office of judge, and the record must show his resignation, death or failure to be present in order to warrant the election of another judge. Here it is only necessary to say that it has been held that where a special judge has tried a case and no objection was made on the trial to his authority, and the record is silent as to the mode of his appointment or election, no objection to his authority can be raised in the appellate court for the first time, provided that by law he could have been elected, as the appellate court will presume that he was legally elected. *State* v. *Lowe,* 21 W. Va. 782; *Jarrell* v. *French,* 43 *Id.* 457; *Winans* v. *Winans,* 22 *Id.* 678. Such is the general law laid down, under many authorities, in 11 Ency. Pl. & Prac. 793. No objection was made to the judge in the trial court. Therefore, though the record does not show the resignation or other reason for non-service of the judges antecedently elected, yet we will presume that such a state of things existed as to warrant the election of Couch, either on account of the resignation or absence of the other judges. It is true that chapter 112, section 11, Code of 1899, does require that if the regular judge is present, he must order the election of a special judge and give the reasons therefor; but here the record states that he was absent and gives that as a reason for the election of a special judge, and when the reg-

ular judge is absent it is only necessary to say so on the record, to warrant an election of a special judge, if, indeed, it be necessary to make such statement at all. The statute does not demand that the facts be stated of record to warrant the election of a second or third special judge. But the further position is taken that the election of Couch is utterly void on the theory that McClintic had been already elected special judge, and that under no circumstances whatever could there be an election of another special judge at the same term. We cannot accept this construction of the statute. It is true that the statute does declare that a special judge may be elected, to hold the court "during the absence of, or for the trial of the cause in which the judge cannot preside." This is a remedial statute. The language quoted means that whenever the judge is absent a special judge may be elected to act while he is absent. That is the warrant for an election. The record states the fact of the absence of the regular judge as a reason for Couch's election. The statute intends that the court shall go on, and business be dispatched notwithstanding the absence of the regular judge, and I ask why should the court and business be stopped by the absence from death, sickness or resignation of a special judge any more than from the absence of the regular judge? The statute does not limit the number of elections of special judges. According to this contention, if the regular and first elected special judge be both absent, the court must stop. Neither the letter nor the spirit of this remedial statute calls for a construction productive of such great inconvenience and public injury.

A fourth point made against the judgment is, that the defendant is not shown by the record to have been present in court when a motion to set aside the judgment was made in the criminal court. The record says that on the 23rd day of February, "This day came the defendant and moved the court to set aside the verdict heretofore entered in this case on the grounds that said verdict is contrary to the law and the evidence, and said judgment is contrary to said verdict." Now, as held in *Lawrence's Case,* 30 Grat. 845, approved in *State* v. *Parsons,* 39 W. Va. 464, it is necessary that a prisoner accused of felony shall be present in his own proper person from the inception of the trial to the final judgment inclusive, when anything is done affecting him, and the record must show his presence, and he must be

present when action is had on a motion for a new trial; but as held in the *Lawrence Case,* and also in *State* v. *Cross,* 44 W. Va. 331, if it may be inferred from the record that he was present, that is sufficient, though the record does not formally state that he was present. The record here states that the defendant came into court and made this motion, definitely so states, affirmatively so states. Presumably it was in proper person. The record does not say he appeared by attorney. Moreover, on a prior day of the term, as the record shows, the prisoner was in person present at the rendition of the verdict and made a motion to set aside the verdict and grant a new trial, and that the court overruled it, and rendered final judgment upon the verdict. Eight days thereafter the accused, as it seems, conceiving that the recommendation of the jury of mercy rendered the judgment erroneous, made the motion to set aside the verdict. This was after the motion for a new trial had been made and overruled and final judgment passed. Therefore, so far as the motion for a new trial is concerned, there can be nothing in the point, because on a former day Newman was personally present when a new trial was refused. *State* v. *Parsons, supra.* But it is claimed that there was a motion to set aside the judgment which had been rendered eight days before on the ground that it was not warranted by the verdict. The language above quoted from the record will not, if strictly construed, by its letter import any motion to set aside the judgment, but only the verdict. But say that there was a motion to set aside the judgment. It is extremely doubtful whether we should carry the requirement of the presence of the accused so far as to hold that after the trial has closed and a final judgment rendered, the accused must be personally present when he makes a motion to set aside that final judgment. Be this as it may, as stated above, the record sufficiently shows the presence of the accused. Finding no error we affirm the judgment of the criminal court. Though it is not necessary, because the verdict is a finality, yet I will say that the verdict is right. Newman called Shea a God damned liar, when Shea struck at Newman with a small railroad lantern, and Newman jumped back, drew a pistol and fired five shots at Shea, three of them striking him. Where was the emergency of life or limb to justify such quick recourse to a most deadly weapon, and to justify five shots? Could not Newman have retreated?

The law of self-defense required it, especially when he had brought the trouble upon himself by such opprobious language? There was no stress of life or limb to justify Newman's actions.

*Affirmed.*