## CHARLESTON.

STATE v. CHARLES BANKS

(No. 5050)

Submitted September 22, 1925. Decided September 29, 1925.

1. CRIMINAL LAW—*Instructions, Abstract, and Making No Reference to Facts, Should Not be Given.*

   Instructions to the jury on the law, abstract, and making no reference to the facts, and therefore defective in form, should not be given.  (p. 716).

2. SAME—*Where Court Gives Instructions Fully Covering Law Applicable to Facts in Evidence, Refusal of Other Instructions, Which Are Mere Repetitions of Those Given, Was Not Error.*

   Where the Court gives instructions fully covering the law applicable to the facts shown in evidence it is not error to refuse other instructions which are mere repetitions of instructions given.  (p. 716).

3. HOMICIDE—*On Trial for Murder, Jury Are Judges of Degree of Crime.*

   On a trial of one accused of murder the jury are the judges of the degree of the crime.  (p. 712).

4. SAME—*Fact That State's Evidence Tends to Show Extenuating Circumstances Held Not to Relieve Accused of Burden of Establishing Self Defense.*

   Where, upon a trial for murder, the evidence introduced by the State to establish the homicide, tends to show extenuating circumstances, this does not relieve the defendant of the burden of establishing self defense, if it is relied on, to the satisfaction of the jury.  (p. 717).

5. SAME—*Verdict of Jury, Adverse to Defense of Self Defense, Will Not be Set Aside Unless Manifestly Against Weight of Evidence.*

   It is peculiarly within the province of the jury to weigh the evidence upon the question of self defense, and the verdict of a jury adverse to that defense will not be set aside unless it is manifestly against the weight of the evidence.  (p. 718).

Error to Circuit Court, Logan County.

Charles Banks was convicted of murder in the second degree, and he brings error.

*Affirmed.*

W. L. Taylor and Ira P. Hager, for plaintiff in error.

Howard B. Lee, Attorney General, and R. A. Blessing, Assistant Attorney General, for the State.

WOODS, JUDGE:

Charles Banks was indicted for the murder of Price Perdue. On August 28, 1923, he was tried, convicted of murder in the second degree, and sentenced to confinement in the penitentiary for a period of five years. He comes here on writ of error.

The homicide was committed on Sunday afternoon, July 22, 1923, in a boarding house kept by Madam White and George Banks at Peach Creek in Logan County. Charles Banks, hereafter referred to as the defendant, came over to visit his father, George Banks, on Sunday morning. Later in the morning, Sallie Perdue, who had had some trouble with her husband, came to this boarding house. After dinner the owners of the said boarding house, the defendant and Sallie Perdue went out on the porch, the latter in her stocking feet, she having removed her shoes and left them in the house. While these four were sitting on the porch, Price Perdue and his brother drove up in a car. Price Perdue invited his wife (Sallie Perdue) out around the corner of the house, and requested her to go home with him. There was some conversation between them, during which time Perdue hit his wife with his hand, and in the language of one witness "snatched her". Then began the happenings leading directly to the tragedy. The facts put in testimony by the State tended to support the theory that the husband went into the house, which was a public house, merely to get his wife's shoes, and that as he was leaving he was assaulted by George Banks and knocked down, thereby precipitating the fighting that followed in the room preceding the shooting. The defendant combatted this theory by making the claim that Price Perdue first assaulted George Banks in his home, after being for-

bidden to enter by said Banks, and thereby provoked the affray. The evidence went to the issues thus raised.

According to the witnesses for the State, the wife consented to go home with her husband, and said, "I will go in and get my shoes", to which the husband replied, "Never mind, I'll get your shoes myself". That such statement was made is likewise corroborated by a witness for defendant, and the defendant himself. The cross-examination of the defendant on this point reads: "Q. You heard Price say that he would get her shoes? A. Yes, sir. Q. Where were the old man Banks, Daisy McDowell and Madam White? A. They were there on the corner of the porch. Q. Price spoke that out loud, didn't he? A. Certainly he did. Q. Said, 'I will get the shoes'? A. Yes, sir. Q. There wasn't anything to keep the others from hearing him say that, was there? A. No, sir." The State's witnesses further testified, that Price Perdue, on entering the house, picked the shoes up and started out of the house, whereupon George Banks, who had followed him into the house, told him to "set them down", and struck deceased and knocked him down. George Banks said: "I asked him what he wanted and he didn't answer; and I tried to put him out, and he commenced fighting." From this on there was general fighting between George Banks, Price Perdue and the defendant. The defendant was knocked down once by said Perdue, according to the former's testimony, and he states what followed in these words: "I got up. He had knocked me down over by a dresser, and there was a pistol on the dresser, and he was still wrestling with papa. As I was getting up, I said to papa to get out of the way, and if he don't get out I will put him out. And then I said, 'Get out before I fire.' And I shot, and the first shot hit him here in the jaw." "Q. How many shots did you fire? A. Three. * * * * Q. And you picked up that pistol and told your father to get out of the way, and you would put him out, didn't you? A. I sure did. * * * * Q. And don't you know that the first shot you fired at his head? A. I sure did." After stating that he fired the shots to protect himself and his father from great bodily harm, the defendant continued: "I shot him two shots, and he said, 'I will go

out'; and he grabbed the electric lamp, and I shot him the third time.'' All admit that the deceased had no weapon and fought with his fists. The only weapon used during the altercation was the one with which the defendant shot the deceased. The physician testified that *four* wounds were inflicted on the deceased. One went in the right cheek; another in the left side of the neck; another in the left side of the chest; and the other one in the right side of the chest. The injured man was taken to the hospital, where he died on August 3, 1923.

The first assignment of error goes to the refusal of the court to give to the jury certain instructions at the request of the defendant. The State offered no instructions. Those given on behalf of the defendant are as follows: ''(2) The Court instructs the jury that the indictment against the defendant is no evidence of his guilt, but is merely a formal charge for the purpose of putting him upon his trial. The jury must commence the investigation of this case with the presumption that the defendant is innocent of the crime of which he is accused and you should act upon the presumption throughout your consideration of the evidence, and unless this presumption of innocence shall have been overcome by proof of guilt so strong, credible and conclusive as to convince your minds beyond all reasonable doubt that the defendant is guilty, and unless the evidence is of such a nature as to exclude all reasonable doubt of guilt, then you should find the defendant not guilty. (10) The Court instructs the jury that although you may believe from the evidence in this case that the defendant gave to the deceased the gun shot wound that caused his death, and though you further believe that it was done with a dangerous and deadly weapon, yet if you also believe from the evidence that the defendant acted from sudden passion brought about by being assaulted, struck and beaten by the deceased without fault on the part of the defendant, and that the defendant in so wounding the deceased was not actuated by antecedent malice, then you cannot presume malice from the mere fact alone that the killing was done with a deadly weapon. You are further instructed that if you believe from all the evidence, as well by the State as by the defendant, that

the deceased, Price Perdue, in the dwelling house of one George Banks, the father of the defendant, Charles Banks, of this county, assaulted and beat the defendant, Charles Banks, and his father, George' Banks, after he had been told not to come into the house of said George Banks, and without fault on the part of either the said George Banks or the defendant, Charles Banks, and. that such assault was of such a character as to cause the defendant to fear and believe that death or great bodily harm was about to be inflicted upon him or upon his father, George Banks, by the deceased, and if you further believe that the defendant had reason to believe and did believe himself and his father was in danger of death or serious bodily injury, and that he acted without malice or previously formed design, and only acted because he then believed himself and his father, George Banks, in immediate danger of death or great bodily injury, and killed the deceased by reason thereof, then the defendant is not guilty of any offense, and your verdict should be not guilty; notwithstanding the fact that the killing was done with a deadly weapon, and you are authorized in considering the imminency of the danger of the defendant from the deceased to take into consideration their relative sizes and strength. (11) The Court instructs the jury that the mere fact that the deceased did not use any deadly weapons in his fight with Charles Banks and George Banks does not deprive the defendant, Charles Banks, of the right to justify himself under the law of self defense if he believed and had reason to believe that either he or his father were in danger of serious bodily harm at the hands of Price Perdue, and in passing upon this question the jury are instructed that they may take into consideration the comparative size and strength of the said Price Perdue and the defendant, Charles Banks. (13) The Court instructs the jury that under our law a man's house is his castle, and he has a right to defend it against any one who attempts to enter without his consent, and if one intrudes himself upon the home of any one without invitation then the owner may order him away, and if he refuses to go then he may use such force as may be reasonably necessary to expel the intruder; and the Court further instructs

the jury that if they believe from the evidence in this case that the deceased, Price Perdue, after being told not to go into the house of George Banks by the said George Banks and Madam White, the proprietors of said house, that the said George Banks had the right to put his hands on Perdue's shoulder with a view of putting him off or leading him out of the house after he had entered without the consent and against the will of the said proprietors, and if Perdue offered resistance the said George Banks had a right to use enough force to overcome that resistance; and the jury are instructed that if they believe from the evidence that after Price Perdue had gone into the house of George Banks against his will and had refused to go out of said house upon the request of said George Banks and put up such resistance as to knock down the said George Banks in his house, then the said defendant, Charles Banks, seeing the said Price Perdue knock his father down, had a right to protect his father and his father's home to the extent of killing the said Price Perdue, if the said Charles Banks believed and had reason to believe that it was necessary to either protect himself or his father from serious bodily injury or to protect the home and habitation of the said George Banks''. The foregoing instructions are very comprehensive and fairly set out the law in relation to the prisoner's defense. The subject matter of instructions one, three, four, six, seven, eight and nine is covered and embraced in instruction number two given to the jury. Instruction twelve, relating to self defense, is merely a re-statement of the principles of law contained in instructions ten and thirteen. The decisions lay down the rule that where the court gives instructions fully covering the law applicable to the facts shown in evidence, it is not error to refuse other instructions which are mere repetitions of the instructions given. *State* v. *Toney,* 98 W. Va. 236; *State* v. *Owens,* 96 W. Va. 309; *State* v. *Wriston,* 93 W. Va. 536; *State* v. *Driver,* 88 W. Va. 479. Applying this rule here the refusal of the court to give said instructions one, three, four, six, seven, eight, nine and twelve, was not error.

Instruction number five relating to the unanimity of the jury in the form that it was requested by the defendant, violates a well known principle that instructions to the jury on the law,

abstract, and making no reference to the facts, are defective in form, and therefore, should not be given. *State* v. *Owens,* 96 W. Va. 309. While the court in *State* v. *Wisman,* 94 W. Va. 224, held that it was error to not give an instruction embodying the law as to the unanimity of the verdict, it did not reverse the case for that reason alone, but instead said: "However, we do conclude that the refusal to give instruction No. 3, instructing the jury as to the unanimity of the verdict, and the right and duty of each individual juryman in arriving at a verdict was error which presumably would be prejudicial to the defendant; and in view of this, *and the inadvertent deprivation of the proper instructions upon the law of self defense as applicable to the case we have concluded, reluctantly,* to set aside the verdict and award defendant a new trial." Thus is clearly expressed the fact that the verdict would not have been disturbed alone for the failure to give the instruction in question. Again, this instruction in that case was not assailed because of the vice of being abstract in form as the one in the instant case. In *State* v. *Noble,* 96 W. Va. 432, it is held that the accused in a criminal case is entitled to have the jury told that if any juror has a reasonable doubt as to the guilt of the accused, after hearing the evidence, receiving the instructions of the court and listening to the arguments of counsel, such juror should not agree to a conviction. Judge LIVELY in this case said: "We do not think this instruction is couched in such terms as would invite the jury to disagree, although it says nothing about consultation with fellow jurymen in the jury room (which would have rendered it less objectionable)." An instruction on this point approved in *State* v. *McKinney,* 88 W. Va. 401, contains the latter requirement. So, instruction five, in the instant case, in addition to being open to the objection of being abstract in form, is incomplete in scope, measured by the rule announced in the two last mentioned cases.

The only other assignment of error is that the verdict is contrary to the law and the evidence. The killing is admitted, and the defendant relied upon self defense to excuse him. Because there may have been extenuating circumstances does not relieve the defendant of the burden of establishing such

defense. *State* v. *Dillard,* 59 W. Va. 197. It is peculiarly within the province of the jury to weigh the evidence upon the question of self defense, and the verdict of a jury adverse to that defense will not be set aside unless it is manifestly against the weight of the evidence. *State* v. *Dillard, supra; State* v. *Newman,* 49 W. Va. 724. The jury evidently did not believe that there was the danger to life or limb of either defendant or his father to justify recourse by defendant to a most deadly weapon, and to justify the fusillade of shots that followed. Our duty is to affirm the judgment.

*Affirmed.*