STATE OF WEST VIRGINIA

*v.*

DENZIL JACKSON RILEY

(No. 14529)

Decided October 6, 1981.

*Stephen A. Wickland* for plaintiff in error.

*Chauncey H. Browning,* Attorney General, *Richard S. Glaser, Jr.,* Assistant Attorney General, *James V. Cann,* Special Assistant Attorney General, for defendant in error.

McHUGH, JUSTICE:

This action is before this Court upon the petition of Denzil Jackson Riley for an appeal and supersedeas from an order of the Circuit Court of Harrison County, West Virginia, entered upon a jury verdict, adjudging Riley (hereinafter "defendant") guilty of the felony offense of grand larceny. Consequently, this Court has before it all matters of record, including a transcript of the defendant's trial, and the briefs filed by counsel.

At the May, 1976 term, a grand jury of the Circuit Court of Harrison County returned a two count indictment asserting that the defendant and John Lee Aiello, Norbert William Ralajczak and Anthony Michael Resendez broke and entered a building used and occupied by Pocahontas Fuel Company, Inc., doing business as Champion Store. Count one of the indictment asserted that the defendant and the other above named persons broke and entered the building in the nighttime and removed items, enumerated in the indictment, of the total value of $2,092.19. The allegations in count two of the indictment were essentially the same as in count one, with the exception that in count two the breaking and entering and theft were alleged to have occurred in the daytime.

The defendant was tried separately from his co-indictees. The trial began on June 26, 1978, and on June 30, 1978, the jury returned the following verdict: "We the jury, find the defendant Denzil Jackson Riley, guilty of grand lar-

ceny as charged in the within indictment." Subsequently, the defendant was sentenced to the penitentiary for a period of not less than one nor more than ten years.

Specifically, the record indicates that the defendant and his co-indictees stole property from the Champion Store at Owings, West Virginia on January 16, 1976. The defendant had been drinking that evening. Upon leaving in a station wagon filled with property from the store, the defendant and his co-indictees were stopped for a tail light violation by Trooper L. J. Maxey of the West Virginia Department of Public Safety. At that time Trooper Maxey saw various items of property in the station wagon and further noticed the defendant as one of the passengers. The defendant does not deny being in the station wagon stopped by Trooper Maxey. Subsequently, Trooper Maxey learned of the theft at the Champion Store and upon arriving at the scene concluded that entry into the building had been made by breaking the glass in the front door. The defendant was arrested on January 17, 1976.

The testimony adduced at the defendant's trial indicated that many items were taken from the Champion Store during the theft, including two tape players. These tape players were described as a Capehart eight-track stereo tape-radio player and an Emerson eight-track stereo. During the trial the defendant's confession was admitted into evidence. In that confession, the defendant admits going into the Champion Store, taking a tape player, and returning to the station wagon.[1] In addition to

---

[1] The confession of the defendant, given January 17, 1976, states, in part, as follows:

I was pretty well drunk that night, I had been drinking all day Thursday. I had been at the Home Hotel. Norm, John, and Tony was there and we all left together from the Hotel when it closed. We took some beer to go and left in Aiello's car. We rode around and I passed out. When I woke up we were at the store in Owings. I didn't really want to go in, but I went in, Norm woke me up and said come on. I remember going in the door, I saw the tape player and took it to the car. I sat in the front seat with it and I didn't get anything else. We went through the front door, I remember going through it. We left for Clarksburg after the stuff was loaded. When we got to Gore, John shoved me to get out, that's

the confession, the defendant at trial admitted going into the Champion Store and taking a tape player.

At the conclusion of the trial, the judge informed the jury that four possible verdicts could be returned against the defendant. These verdicts were: (1) guilty of breaking and entering, (2) guilty of grand larceny, (3) guilty of petit larceny and (4) not guilty. It is from his conviction of grand larceny that the defendant appeals to this Court.

The defendant contends that there is no evidence in the record to show that he broke into the Champion Store. The defendant admits that he was present at the store but denies participation in the breaking and entering. Furthermore, the defendant contends that the elements of the offense of grand larceny were never explained to the defendant or the jury. Finally, the defendant asserts that the tape player he took from the store was a Sony tape player which was not listed upon the indictment with the other property allegedly stolen. Consequently, the defendant concludes that he could not have been convicted upon the basis of the indictment. At the time the alleged theft by the defendant occurred, *W. Va. Code*, 61-3-13 [1957], provided as follows:[2]

> If any person commit simple larceny of goods or chattels, he shall, if they be of the value of fifty dollars or more, be deemed guilty of grand larceny, and, upon conviction thereof, shall be confined in the penitentiary not less than one nor more than ten years; and if they be of less value, he shall be deemed guilty of petit larceny, and, upon, conviction thereof, be confined in jail not exceeding one year.

when you had us stopped. We then went to Glen Elk down by a candy shop. They stopped there at the candy shop and divided the stuff. All I took was the tape player. I don't know where any of the other things are. They let me out at the bus terminal parking lot and I went home to my mothers behind the library. I stayed in the shanty beside my mother's.

[2] In 1977, the West Virginia Legislature rewrote *W. Va. Code*, 61-3-13, and the fifty dollar distinction between grand and petit larceny was changed to two hundred dollars.

In both counts of the indictment, the offense of breaking and entering, *W. Va. Code,* 61-3-12 [1923], was combined with larceny, *W. Va. Code,* 61-3-13 [1957].[3] Specifically, the indictment alleges that the defendant broke and entered the building with the intent to commit a larceny and, in fact, did steal, take and carry away the various items of property. As this Court has held: "An indictment may allege burglary and larceny in the same count, and likewise may join charges of breaking and entering and larceny in the same count." Syl. pt. 3, *State v. Varner,* 131 W. Va. 459, 48 S.E.2d 171 (1948); Syl. pt. 2, *State v. Cutlip,* 131 W. Va. 141, 46 S.E.2d 454 (1948). *See* also Syl. pt. 1, *State v. Flanagan,* 48 W. Va. 115, 35 S.E. 862 (1900).

Moreover, State's instruction number 6 and defendant's instruction number 2 were given at the conclusion of the defendant's trial which set forth the elements of grand and petit larceny. This Court is, therefore, of the opinion that the offense of larceny and its elements were properly set forth for the defendant and the jury.

Accordingly, this Court must consider whether there was sufficient evidence adduced at trial to support the

---

[3] *W. Va. Code,* 61-3-12 [1923], provides as follows:

If any person shall, at any time, break and enter, or shall enter without breaking, any office, shop, storehouse, warehouse, banking house, or any house or building, other than a dwelling house or outhouse adjoining thereto or occupied therewith, or any railroad or traction car, propelled by steam, electricity or otherwise, or any steamboat or other boat or vessel, within the jurisdiction of any county in this State, with intent to commit a felony or any larceny, he shall be deemed guilty of a felony, and, upon conviction, shall be confined in the penitentiary not less than one nor more than ten years. And if any person shall, at any time, break and enter, or shall enter without breaking, any automobile, motorcar or bus, with like intent, within the jurisdiction of any county in this State, he shall be guilty of a misdemeanor, and, upon conviction, shall be confined in the county jail not less than two nor more than twelve months and be fined not exceeding one hundred dollars.

An indictment for burglary may contain one or more counts for breaking and entering, or for entering without breaking, the house or building mentioned in the count for burglary under the provisions of this and the preceding section.

verdict of the jury finding the defendant guilty of grand larceny. As this Court has held:

> In a criminal case, a verdict of guilt will not be set aside on the ground that it is contrary to the evidence, where the state's evidence is sufficient to convince impartial minds of the guilt of the defendant beyond a reasonable doubt. The evidence is to be viewed in the light most favorable to the prosecution. To warrant interference with a verdict of guilt on the ground of insufficiency of evidence, the court must be convinced that the evidence was manifestly inadequate and that consequent injustice has been done.

Syl. pt. 1, *State v. Andriotto*, ___ W. Va. ___, 280 S.E.2d 131 (1981); Syl. pt. 1, *State v. Starkey*, 161 W. Va. 517, 244 S.E.2d 219 (1978).

It is clear from the record that on January 16, 1976, the defendant was more than a witness to a crime. As the confession and testimony of the defendant indicate, he entered the Champion Store by way of the broken front door and removed a tape player. The defendant left the scene with the tape player by way of the station wagon along with his co-indictees and the other stolen property.

At trial the defendant testified that he took a Sony tape player valued at less than fifty dollars and that this particular tape player was not listed upon the indictment. This Court is of the opinion, however, that the indictment was sufficiently clear to inform the defendant that at least one tape player was taken from the Champion Store. Moreover, there was testimony at trial to the effect that the two tape players allegedly taken from the store were valued in excess of fifty dollars. Consequently, the evidence was sufficient to support the verdict of the jury in this regard.

In any event, this Court is of the opinion that the evidence was sufficient for the jury to convict the defendant of grand larceny with respect to all of the property taken from the store by the defendant and his co-indictees.

In *State v. Petry*, ____ W. Va. ____, 273 S.E.2d 346 (1980), this Court restated the distinctions among parties to felony crimes as follows:

> At common law the parties to a felony were divided into principals and accessories. The principals were divided into: (1) principals in the first degree who actually perpetrated the act; and (2) principals in the second degree, known under early common law analysis as accessories at the fact, who were actually or constructively present at the scene of the crime and who aided or abetted directly or indirectly. The accessories were divided into: (A) accessories before the fact who conspired with the perpetrator but were not present during the commission of the crime; and, (B) accessories after the fact who rendered assistance after the crime was completed. 273 S.E.2d at 349.

In *Petry*, the defendant was convicted of breaking and entering upon an indictment indicating that she was a principal in the first degree. The evidence, however, indicated that the defendant served as a look-out in a motor vehicle and never entered the building during the commission of the crime. This Court, holding that the defendant should have been indicted as an aider and abettor, reversed the defendant's conviction. However, this Court further held in Syl. pt. 1 as follows:

> With regard to all cases in which the trial shall commence after the date on which this opinion is handed down by this Court the prior common law rule requiring that aiders and abettors or accessories before the fact be indicted as such is abolished and, hereafter, a general indictment as a principal in the first degree shall be sufficient to sustain a conviction as an aider and abettor or as an accessory before the fact.[4]

---

[4] *W. Va. Code*, 61-11-6 [1923], provides, in part, as follows:

In the case of every felony, every principal in the second degree, and every accessory before the fact, shall be punishable as if he were the principal in the first degree; and every accessory after the fact shall be confined in jail not more than one year and fined not exceeding five hundred dollars.

The defendant in the case before this Court, as in *Petry*, was indicted as a principal in the first degree. Specifically, the indictment alleged that the defendant broke and entered the Champion Store with intent to commit a larceny and further that the defendant committed grand larceny. The defendant was convicted of grand larceny.

It is undisputed that the defendant and his co-indictees entered the Champion Store on January 16, 1976. It is further undisputed that both the defendant and his co-indictees removed property from the store, even though the defendant asserted that he left the store with only one item. Finally, it is undisputed that the defendant and his co-indictees left in the station wagon with the property.

Accordingly, we are of the opinion that a person who is present and participating with others in the taking of property in the commission of a larceny is chargeable with the entire value of the goods taken, even though such person may not have personally taken away each and every one of the items subject to the larceny. *Knight v. State*, 217 So.2d 124, 125 (Dist. Ct. App., Fla. 1968);[5] 52A C.J.S. *Larceny* § 60(3) (c) (1968).

For these reasons, we hereby affirm the judgment of the Circuit Court of Harrison County.

*Affirmed.*

---

[5] In *Knight v. State, supra*, the Court stated that "[i]n cases of theft, the value of the loot is not divided by the number of thieves in determining whether the larceny is grand."