298 S.E.2d 921

**STATE of West Virginia**

v.

**Melvin RAY.**

**No. 14929.**

Supreme Court of Appeals of West Virginia.

Dec. 16, 1982.

James E. Roark, Pros. Atty., and Frances W. McCoy, Asst. Pros. Atty., Charleston, for appellee.

William S. Steele, Preiser & Wilson, Charleston, for appellant.

MILLER, Chief Justice:

This is an appeal by Melvin Ray from an order of the Circuit Court of Kanawha County sentencing him to from ten to twenty years in the State Penitentiary for first degree sexual assault. The defendant makes a number of assignments of error which relate to the reception of evidence, the instructions in the case, the trial court's handling of the jury, and the sufficiency of the evidence presented. After examining the record, we conclude that the trial court committed no reversible error, and we affirm the defendant's conviction.

The defendant, Melvin Ray, and his brother, Roger Ray, were charged with sexually assaulting a seventeen-year-old female in St. Albans on December 9, 1977. During the defendant's trial, the State introduced evidence showing that on the day in question the victim was enticed into an automobile by the defendant and his brother, both of whom she knew. According to the victim, after she entered the car, Roger Ray displayed a pistol to her and threatened her with harm if she refused to participate in sexual acts.

She was driven to the vicinity of the St. Albans City Park where the defendant threatened to kill her and throw her body in the grass. Thereafter, she performed oral sex on the defendant. The entire event occurred between approximately 11:00 and 11:40 a.m. The victim was observed entering the car shortly before the incident by a girlfriend. Another person, a Mr. Heim, saw her on the street at approximately 11:40 a.m., immediately after the incident. He testified that she was extremely upset, that her face was flushed, and that her eyes were red.

Within five to ten minutes after being released from the car, the victim arrived at her home where she told her stepmother what had happened. Her stepmother described the victim's appearance as being emotionally distraught, shaking all over with tears in her eyes. Her stepmother also stated that as the victim related her story she was "stuttering and trying to find words." The stepmother was unable to report the incident to the authorities

immediately because she was caring for an ill child.

At approximately 10:30 that evening, the victim was examined by a physician who could not find physical evidence of the sexual contact, though he indicated that because of the lapse of time and because of the victim's liquid intake since the time of the incident he did not expect to find such evidence.

In the course of the trial, the defendant introduced alibi evidence tending to show that he could not have committed the crime charged.

On appeal the defendant argues that the trial court erred in allowing the stepmother to testify over objection, as to what she was told by the victim. He argues that the testimony was inadmissible under the hearsay rule.

■ Our rule is that spontaneous exclamations may be admitted into evidence during the trial of a case under the *res gestae* or spontaneous declaration exception to the hearsay rule. The admission of such evidence is allowed under the assumption that a person stimulated by the immediacy of an exciting event and acting under the influence of that event will lack the reflective capacity essential for fabrication. We discussed the exception in considerable detail in *State v. Young,* 166 W.Va. 309, 273 S.E.2d 592 (1980), and in Syllabus Point 2 of *Young,* we adopted a six factor test which had been previously set out in *Ward v. Raleigh County Park Board,* 143 W.Va. 931, 105 S.E.2d 881 (1958):

"An alleged spontaneous declaration must be evaluated in light of the following factors: (1) The statement or declaration must relate to the main event and must explain, elucidate, or in some way characterize that event; (2) it must be a natural declaration or statement growing out of the event, and not a mere narrative of a past, completed affair; (3) it must be a statement of fact and not the mere expression of an opinion; (4) it must be a spontaneous or instinctive utterance of thought, dominated or evoked by the transaction or occurrence itself, and not the product of premeditation, reflection, or design; (5) while the declaration or statement need not be coincident or contemporaneous with the occurrence of the event, it must be made at such time and under such circumstances as will exclude the presumption that it is the result of deliberation; and (6) it must appear that the declaration or statement was made by one who either participated in the transaction or witnessed the act or fact concerning which the declaration or statement was made."

■ We believe that in the case before us the victim's statement to her stepmother constituted an admissible spontaneous declaration under the test set out in Syllabus Point 2 of *State v. Young, supra.* The statement was made by one who was the victim of the crime, and it related to that event in that it described and explained what happened. It did not involve a mere expression of opinion. The testimony indicates that the victim was pale and shaking. She was obviously under the influence of the event and we believe that the statement was made at a time and under circumstances which exclude the view that it was made as a result of deliberation.

This situation is analogous to *State v. Mahramus,* 157 W.Va. 175, 180, 200 S.E.2d 357, 360 (1973), where the victim of a sexual assault was attacked in a clubhouse. After the assault, she was driven to a house where she reported the event to one of the occupants who subsequently testified to her remarks at trial, which we held to be admissible:

"These statements by the prosecutrix were made soon after the alleged crime and were spontaneous and properly come within the res gestae rule. *State v. Coram,* 116 W.Va. 492, 182 S.E. 83; *State v. Withrow,* 142 W.Va. 522, 96 S.E.2d 913; *Duncan v. State,* 170 Tex.Cr.R. 132, 339 S.W.2d 220; *Estep v. State,* 14 Md.App. 53, 286 A.2d 187; *Palmer v. State,* 134 Tex.Cr.R. 390, 115 S.W.2d 641; 2 Wharton, Criminal Evidence, § 313 (13th ed. 1972)."

Two of the defendant's assignments of error relate to the question of whether the

victim's testimony was corroborated. First, the defendant argues that the trial court erred in giving State's Instruction No. 6. That instruction referred to corroborating facts and circumstances testified to by other witnesses. The defendant argues that, in fact, only one witness, the victim, testified to facts about the crime. He argues, in effect, that there was no corroborating evidence and that the giving of the instruction was thus improper. The defendant also argues that the trial court erred in refusing to give Defendant's Instruction No. 12 which stated that if the jury believed that the case against the defendant rested only on the testimony of the victim, then they should scrutinize her testimony with care.

■ Recently, in *State v. Payne*, 167 W.Va. 252, 280 S.E.2d 72, 77 (1981), we discussed the corroboration rule in regard to evidence of the defendant's identity in a sexual charge where such identification was based upon the uncorroborated testimony of the victim. After citing our earlier cases of *State v. Garten*, 131 W.Va. 641, 49 S.E.2d 561 (1948), and *State v. Perry*, 41 W.Va. 641, 24 S.E. 634 (1896), we concluded in Syllabus Point 5 of *Payne, supra:*

"Where the State's case is based upon the uncorroborated and uncontradicted identification testimony of a prosecuting witness, it is error not to instruct the jury upon request that, if they believe from the evidence in the case that the crime charged against the defendant rests alone on the testimony of the prosecuting witness, then the jury should scrutinize such testimony with care and caution."

In *State v. Garten, supra,* we recognized that where the testimony of the victim of a sexual offense is corroborated to some degree, it is not reversible error to refuse a cautionary instruction that informs the jury that they should view such testimony with care and caution. This is the general rule elsewhere. *See United States v. Merrival*, 600 F.2d 717 (8th Cir.1979); *People v. Merriam*, 66 Cal.2d 390, 426 P.2d 161, 58 Cal.Rptr. 1 (1967); *State v. Dizon*, 47 Haw. 444, 390 P.2d 759 (1964); *May v. State*, 89 Nev. 277, 510 P.2d 1368 (1973); *State v. Reiman*, 284 N.W.2d 860 (S.D.1979).

In *State v. Vance*, 164 W.Va. 216, 262 S.E.2d 423 (1980), we reviewed our earlier cases and discussed what type of evidence could be considered as corroborating a witness' testimony. There we dealt with the rule relating to the corroboration of accomplice testimony, and in particular what type of evidence is deemed to be corroborating which is the issue before us here. In Syllabus Point 3 of *Vance*, we set this principle:

"Where the testimony of an accomplice is corroborated in material facts which tend to connect the accused with the crime, sufficient to warrant the jury in crediting the truth of the accomplice's testimony, it is not error to refuse a cautionary instruction. This rule applies even though the corroborative evidence falls short of constituting independent evidence which supports the alleged ultimate fact that the accused committed the offense charged."

■ In the case before us, one of the prosecution's witnesses, Cecilia Sanson, testified that shortly before the time of the alleged crime she observed the victim enter a car with the defendant and his brother, which corroborated the victim's story of her initial involvement. Another of the State's witnesses, Earl Heim, testified that he saw the victim down the street in front of the high school at 11:40 a.m. He said that she was extremely upset, that her face was flushed and her eyes were red. This corroborated her testimony as to when she was released from the car by the defendant and her mental and physical state at that time. Moreover, her stepmother, Nancy Higley, whose home the victim lived in, saw her shortly after this time and corroborated her story, which we have previously found to be admissible. We thus conclude that there was sufficient corroboration under the *Vance* test and defendant's instructional error is without merit.

■ The defendant also claims that the trial court erred in refusing to give Defendant's Instruction No. 8, which would have informed the jury that if there was a conflict in the evidence, and if the jury enter-

tained a reasonable doubt as to the guilt or innocence of the defendant, then it was the duty of the jury to adopt the evidence, theory and conclusion most favorable to the defendant. We note that Defendant's Instruction No. 5, which was given, stated, in part, "and if the jury have a reasonable doubt upon any material fact necessary to show the guilt of the defendant, then they should give him the benefit of the doubt and find him not guilty." In Syllabus Point 4 of *State v. Helmick,* 169 W.Va. 94, 286 S.E.2d 245 (1982), we said:

"It is not reversible error to refuse to give instructions offered by a party that are adequately covered by other instructions given by the court. Syllabus Point 20, *State v. Hamric,* 151 W.Va. 1, 151 S.E.2d 252 (1966)."

This has been our consistent position. *See State v. Scotchel,* 168 W.Va. 545, 285 S.E.2d 384 (1981); *State v. Demastus,* 165 W.Va. 572, 270 S.E.2d 649 (1980); *State v. Shaffer,* 138 W.Va. 197, 75 S.E.2d 217 (1953).

The jury began deliberating on April 19, 1979, and failed to reach a verdict that day. After resuming their deliberations on April 20, they returned with two questions. First, they asked if they could decide guilty or not guilty with a comment. The judge responded that the jury was, in a general sense, free to render any verdict which it wished, but insofar as the case before them was concerned, there were two possible verdicts, guilty of sexual assault in the first degree, and not guilty. The court also noted that under prior law in rape cases jurors could recommend mercy.

Later the jury returned to ask if the victim was a minor under West Virginia law on December 9, 1977. The trial court informed the jury of the age of the victim and that she was a minor. The court refused, despite defense counsel's request, to inform the jury that the victim's age had nothing to do with the case.

After resuming deliberations, the jury returned a verdict of guilty of first degree sexual assault. At the bottom of the jury form was a recommendation of mercy.

In regard to these occurrences during the jury's deliberations, the defendant makes several assignments of error. First, he contends that the court erred in denying his motion for a mistrial when it became apparent that the jury was considering the age of the victim which had nothing to do with the crime charged. Also, the defendant argues that the recommendation of mercy shows a compromise verdict and that the verdict was patently invalid on its face for the reason that there is no provision for recommendations of mercy in first degree sexual assault cases under West Virginia law.

■ The defendant does not claim that the court's instructions to the jury regarding the elements of the crime, which contained nothing about the age of the victim since she was over sixteen, were incorrect. The victim was asked on direct examination what her age was at the time of the alleged crime and she stated that she was seventeen. The defense did not object to that question. We do not find reversible error in the court's subsequent answer to the jury's question as to the age of majority in this State.

■ We also disagree with the defendant's assertion that the jury's recommendation of mercy shows a compromise verdict. Our general rule is that where the law does not give the jury the right to recommend mercy in order to obtain a more lenient sentence, if the jury recommends mercy, this recommendation is treated as surplusage and does not affect the validity of its verdict. This rule is set out in Syllabus Point 2 of *State v. Newman,* 49 W.Va. 724, 39 S.E. 655 (1901):

"Where a verdict finds a defendant guilty of a crime, a recommendation in that verdict by the jury to the mercy of the court has no legal effect, is mere surplusage, and cannot be considered in an appellate court to set aside the judgment of the trial court in fixing punishment."

*See also Crawford v. Coiner,* 152 W.Va. 411, 163 S.E.2d 793 (1968); *State v. Hayes,* 136 W.Va. 199, 67 S.E.2d 9 (1951); *State v. McCoy,* 95 W.Va. 274, 120 S.E. 597 (1923).

Finally, the defendant claims that the evidence introduced during trial was at variance with the indictment in the case in that the indictment charged that the defendant employed a gun in the commission of the crime while the evidence showed that the defendant's brother, and not the defendant, threatened the victim with a gun. He also claims that the trial court erred in giving State's Instruction No. 5, which in effect informed the jury that the brother's use of a deadly weapon could be attributable to the defendant in the commission of the crime.

In Syllabus Point 2 of *State v. Wisman*, 93 W.Va. 183, 116 S.E. 698 (1928), we recognized that where two or more persons combine to do an unlawful act, and the unlawful act is performed, the act of any one of them in furtherance of the unlawful design, is the act of all:

> "Where there is a combination and conspiracy between two or more persons to commit a crime, if the act of one done in carrying out the common purpose and design terminate in a criminal result, though not the particular result intended, all are liable."

This same concept was used in *State v. Riley*, 168 W.Va. 129, 282 S.E.2d 623 (1981), where we stated in Syllabus Point 3: "A person who is present and participating with others in the taking of property in the commission of a larceny is chargeable with the entire value of the goods taken, even though such person may not have personally taken away each and every one of the items subject to the larceny."

The rule that participants in a criminal offense are chargeable with each other's acts is also the general rule in other jurisdictions. *E.g., State v. Green*, 116 Ariz. 587, 570 P.2d 755 (1977); *Commonwealth v. Cofer*, 257 Pa.Super. 528, 390 A.2d 1363 (1978); *State v. Barton*, 424 A.2d 1033 (R.I.1981); 21 Am.Jur.2d *Criminal Law* § 180 (1981).

We believe that in the case before us there was ample evidence showing the defendant and his brother were acting in concert at the time of the incident which gave rise to the indictment. The evidence also indicates that the defendant's brother threatened the victim with a pistol to induce her to engage in sexual acts with the defendant. Under the above authorities, the act of the defendant's brother could properly be attributed to the defendant, and we conclude that the defendant's assignment on this point is without merit.

Finding no reversible error, we affirm the judgment of the Circuit Court of Kanawha County.

Affirmed.